UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUSTIN NOLEN, | ) |
| | ) |
| PLAINTIFF | ) Civil Action No. 1:14-cv-1590 (APM) |
| vs. | ) |
| | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | ) |
| DEFENDANT | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Introduction

When an FBI Special Agent needs to locate records referring or relating to an

individual, they have a variety of options at their disposal. These options include the use

of a brand new, state-of-the-art computer system known as Sentinel. Additionally, in

recognition of the fact that not all relevant records reside in centralized computer

databases, Special Agents personally speak to other FBI employees in relevant

departments or field offices to assist in locating records, many of which remain in paper

format. In contrast, when a FBI FOIA analyst needs to locate records referring or relating

to an individual, the search is typically limited to looking for main file (or sometimes

cross-reference) index entries in the Automated Case Support (ACS) system, a decades-

old system used to access the FBI's Central Records System (CRS).

In this case, the FBI analyst used only one of the three programs in the ACS system, a

search called the Universal Name Index (UNI) to search for main and cross-reference

index entries. Because the subject of Plaintiff's FOIA request, Martin Droll, is not

contained in the index, the FBI has concluded that no responsive records exist. However,

the FBI has made no attempt to determine whether there are files which refer or relate to

Martin Droll, but which have not been indexed to him. The FBI's search apparently did

not include any attempt to speak with anyone at the relevant field offices to determine

whether responsive records exist or to pursue the leads provided in the FOIA request.

Further, the FBI did not review the files of any organization or person associated with

Mr. Droll which would be reasonably likely to contain responsive records. Finally, the

FBI refused to perform a full-text ECF search through Sentinel to locate responsive

records. These deficiencies render the FBI's search inadequate. Summary judgment

should therefore be denied to Defendant and granted to Plaintiff.


## II. Records Management at FBI

1.  Automated Case Support (ACS)

"Deployed in 1995, ACS is one of several applications residing on the Bureau's

investigative mainframe and is intended to contain information ranging from unclassified

to Secret. ACS is the FBI's investigative system of records and is comprised of three

subsystems: a case indexing system; a case management system; and a system to store

and retrieve text documents." Commission for the Review of FBI Security Programs

(hereinafter "Webster Report") (Ex. 1 at 48.) The ACS is one of the systems that allows

FBI personnel to access the Central Records System (CRS). (Hardy Decl. ¶ 13) [ECF dkt:

9-1] ("Because the CRS cannot electronically query the case files for data, such as an

individual's name or social security number, the required information is duplicated and

moved to the ACS so that it can be searched.")

But while the ACS contains a large number of documents, not all records relevant to investigations are contained in it or the CRS. As noted in the preceding paragraph, it is only designed to information classified at up to the Secret level. The lack of controls in ACS means that some users are not able to submit data, in order to protect sources. (Ex. 2 at 23.) Additionally, "[w]orking papers and drafts relating to subjects covered in the case files, as well as less important administrative records, are maintained within divisions, units, squads, and other subordinate groups in local filing locations." (Ex. 3 at 28.)

Further, records that are *supposed* to be contained in ACS are often not there for a variety of reasons. First, an evaluation of the FBI's Records Management Architecture revealed that "FBI employees generally do not understand exactly what constitutes a record even though most systems provide for the capability to designate information as records (either manually or automatically). When dealing with electronic information, FBI employees have even more difficulty understanding what constitutes a record and, if declared a record, what to do with it. The process for capturing and declaring email messages as records is too complicated." (Ex. 4 at 9-10.) As a result, "[m]ost external media and data are not captured and then managed as an FBI record. Records from desktop applications (e.g., Word documents and emails) often are not properly declared and managed. *This creates vulnerabilities from records management, FOIA, and discovery perspectives*." (Ex. 4 at 10) (emphasis added).

According to the National Commission on Terrorist Attacks Against the United States ("9/11 Commission") Staff Statement Number 12, "For a variety of reasons, significant information collected by the FBI never gets uploaded into the Automated Case Support system, or it gets uploaded long after it is learned. One of the reasons for this is the

3

traditional approach to cases, in which information is treated as 'owned' by the case agent and maintained in a paper case file. One official told us that headquarters personnel visiting the field have been amazed at the information they found in the paper files." (Ex. 5 at 6.)

Another problem is with the ACS system itself. According to the Webster Report, "Many FBI agents avoid ACS, often by delegating ACS functions to support staff. Many agents distrust ACS, and, in defiance of Bureau policy, refuse to upload into the system the most sensitive information in their possession." (Ex. 1 at 48.) The avoidance of ACS in unsurprising, given how archaic the system is. Nearly ten years ago, the Department of Justice (DOJ) Office of the Inspector General (OIG) was already describing the FBI's ACS system as "antiquated" and "obsolete and limited[.]" (Ex. 6 at 3, 5.) As one former FBI executive explained at a Congressional hearing in 2002, "there's no mouse, there's no icon, there's no year 2000 look to it, it's all very keyboard intensive." (Ex. 6 at 15.) According to the FBI's former Chief Technology Officer, Jack Israel, ACS is "based on old technology . . . you're dealing with the old IBM green screens. You're not dealing with a web-based environment, which every one is used to from the Internet." (Ex. 7 at 3.)



FBI Terminal Green Screen
(Source: FBI Records Management Division "Records Management Overview" Video)

The DOJ OIG concluded that there were "national security implications because the FBI is continuing to rely on the ACS and paper files, *which hampers FBI agents and analysts from adequately searching* and sharing information from investigative files." (Ex. 6 at 6)(emphasis added). The FBI has therefore developed and implemented Sentinel, a more modern system for case management and searching.

2.   Sentinel

Sentinel is an "electronic information and case management system that includes records management, workflow management, evidence management, search and reporting capabilities, and information sharing with other law enforcement agencies and the intelligence community." (Ex. 8 at 2.) Implemented in July 2012, FBI employees now routinely use Sentinel to perform their daily investigative activities. (Ex. 8 at 2.) According to the FBI, Sentinel has made it easy for Bureau personnel to retrieve and share information: "Sentinel allows the FBI's law enforcement, intelligence, and support personnel to take advantage of the new opportunities created by the arrival of a modernized global case management system. Information now flows from person to person without the need to generate or mail paper records." (Ex. 9.) Users are able to search Sentinel with a search function: "According to a July 2012 FBI report, the search function is both flexible and powerful enough to accommodate the substantial volume and wide variety of information available for retrieval in Sentinel." (Ex. 8 at 2.) Sentinel

currently has the ability to limit searches to specific cases and subfiles contained within a case. (Ex. 8 at 27.)

3.  Electronic Case File (ECF)

The Electronic Case File (ECF) "serves as the central electronic repository for the FBI's official investigative textual documents. ECF provides the capability of uploading word processing documents to the mainframe where they are filed and serialized, parsing uploaded documents for structured document fields and lead information, searching documents by both structured (i.e., formatted fields such as From/To) and unstructured (i.e., full text) means, and downloading documents in their original word processing format. ECF also handles the serialization of non-textual records." (Ex. 4 at 30.) ECF can be searched through Sentinel. (Ex. 10 at 1.)

As Mr. Hardy has admitted, searching for keywords in text documents via ECF may locate records that would not be found through an index search of ACS. (Ex. 15 at 15 n.5) ("Because the decision to index names in a specific document can vary from document to document, the text search provided a more comprehensive search of the CRS.") This is because the ACS's index is not a "Google-like index, what the FBI does is manually build an index of all the people, places and things." (Ex. 7 at 4.) "Under the ACS process, Special Agents marked paper documents with the information they wanted to be indexed and OSTs indexed the documents in ACS." (Ex. 8 at 15.) FBI's Records Management Division trains special agents that it is not mandatory to index the name of a suspect contained in the body of a document, unless that individual is also the subject of the investigation. (Ex. 11.) Thus, if Special Agents elect to not index the name of a suspect

contained in the body of a document, a search of the Universal Name Index will not locate responsive records. Further, if an agent is not diligent in ensuring that names in the body of the document are marked for indexing, a search of the index will not locate these records.

### III. Adequacy of the Search

The FBI failed to conduct a search reasonably designed to locate all responsive records. Specifically, (1) an ACS UNI (index) search was not reasonably designed to locate all responsive records in the CRS; and (2) the FBI failed to conduct a targeted search.

1.   An ACS UNI search is not sufficient

The shortcoming of conducting an ACS UNI search is that it will only locate records that have been indexed. Thus, an ACS UNI search may fail to locate a significant volume of records that are about the subject of an investigation (in contrast to an individual merely mentioned) if the Special Agent is not diligent in indexing all of the records. When there are other search tools available that do not suffer from this shortcoming, it is unreasonable for the FBI to limit its search of the CRS to use of ACS UNI. *See Negley v. FBI*, 658 F. Supp. 2d 50, 57 (D.D.C. 2009) ("Defendant cannot limit its search to only one record system, which in this case was the UNI, if there are others that were likely to turn up the information requested") (internal quotation marks omitted). These other search tools allow for a more comprehensive search of the CRS and therefore are likely to locate additional responsive records.

Training material from the FBI demonstrates that an ECF search through Sentinel is appropriate in "[c]ases marked high visibility" and in cases where a supervisor directs such a search. (Ex. 10.) This training material suggests that an ECF search through Sentinel is not duplicative of an ACS UNI search, and is not impracticable.

Here, an ECF search through Sentinel should have been conducted for Martin Droll's name and reasonable permutations thereof. A search should also have been conducted for his alias "Marty Rifles." Mr. Hardy's declaration asserts that such a search would be too burdensome. (Hardy Decl. ¶ 27.) However, it is unlikely that a large volume of records unrelated to the subject of Plaintiff's search would be returned by an ECF full-text search because "Martin Droll" and "Marty Rifles" are uncommon names. Undersigned counsel has conducted a search of the LexisNexis Comprehensive Person Report and determined that there are only three whose first and last name are or were Martin Droll, and none who have or have had the first and last name Marty Rifles. (Light Decl. ¶ 7.) A Google search for the phrase "Marty Rifles" returns hits on only one individual, Martin Droll. (Light Decl. ¶ 12.) Therefore, it is unlikely that an ECF search would be too burdensome. Mr. Hardy's conclusory statement to the contrary lacks any specifics about the number of hours it would take to conduct a Sentinel search of ECF or the number of potentially non-responsive hits that would be generated by a search for Mr. Droll's name or alias.

2.   The FBI failed to conduct a targeted search

In addition to automated searches of records, the FBI should have conducted a targeted search for responsive records. In this case, such a search would include conducting a manual review of files which are likely to contain responsive records, and

speaking with personnel who are reasonably likely to know the location of responsive records.

Plaintiff's FOIA request and his subsequent Complaint provide leads that the FBI should have followed in conducting its post-litigation search. According to the request and Complaint, Mr. Droll was born in Guernsey County, Ohio and died in Philadelphia County, Pennsylvania. (Compl. ¶ 18; Hardy Decl. Ex. A.) An associate of Mr. Droll, Shane Madonna, had a court hearing at which Mr. Madonna's lawyer informed him that the FBI had provided the court with material indicating that they believed Mr. Droll was a religious extremist. (Compl. ¶ 14.) The Complaint further indicates that Mr. Droll was a member of the Young Communist League in Ohio, the People's Revolutionary Party in Philadelphia, and the Korean Friendship Association. (Compl. ¶¶ 8-10.)

The FBI failed to review the files, if any, of Mr. Madonna[1] or any of the organizations mentioned. Further, the FBI failed to communicate with the Cincinatti Field Office or the Cambridge, Ohio Residence Agency[2] to follow up on the lead provided by Plaintiff about the information provided by Mr. Madonna's lawyer. The FBI also failed to communicate with the Philadelphia Field Office to follow up on the information provided by Plaintiff that Mr. Droll had lived and died in Philadelphia, and was a member of the People's Revoluntary Part in Philadelphia.

In responding to other FOIA requests, the FBI has spoken with or sent an electronic communication (EC) to an appropriate office to determine if any FBI employees have information about the existence of responsive records. For example, in *Shapiro v.*

_____

[1] A privacy waiver from Mr. Madonna can be provided to the FBI if required to search his file.
[2] Guernsey County, Ohio is within the territorial jurisdiction of the Cincinatti Field Office and its satellite office, the Cambridge, Ohio Residence Agency.

*Department of Justice*, Case No. 13-cv-595 (RMC) (D.D.C.), in response to Plaintiff's

FOIA lawsuit seeking records about the Occupy movement, the FBI "contacted the

appropriate unit who handles the reports referenced in the FBI document attached to

plaintiff's request." (Ex. 12 at 10-11.) As a result, the FBI located five pages of

responsive records that had not been located through previous searches of the CRS. (Ex.

12 at 11.) Similarly, in *SAE Productions, Inc. v. Federal Bureau of Investigation*, Case

No. 07-cv-866 (JR) (D.D.C.), the FBI not only searched the CRS, but also "sent an

Electronic Communication (EC) to the above field offices and the Offices of Public

Affairs and Congressional Affairs at FBIHQ and requested that employees search for and

identify any non-serialized potentially responsive documents." (Ex. 13 at 16.) And in

*Electronic Frontier Foundation v. Department of Justice*, Case No. 06-cv-1773 (RBW)

(D.D.C.), in addition to its "standard search of the CRS," which returned no main files

and one cross-reference, the FBI conducted "an individualized inquiry of the most logical

offices at FBIHQ which could have potentially responsive records," which returned

approximately 72,000 pages. (Ex. 14 at 19, 21.) This individualized inquiry included

"prepar[ing] and circulat[ing] an Electronic Communication ('EC') to those FBIHQ

divisions and offices most likely to possess potentially responsive records requesting that

all personnel to [sic] conduct a thorough search of any documents in their possession,

including unserialized copies of documents, [etc.]" (Ex. 14 at 20.)

Sending an EC or otherwise communicating with the relevant field offices and/or

divisions is a reasonable step likely to locate any responsive records. Although ACS UNI

has been implemented for all field offices, the search conducted by FBI would only

locate the field offices' documents which are indexed to Martin Droll. In order to conduct

a search that is reasonably likely to locate documents that are unserialized and/or unindexed to Martin Droll, the FBI must follow up on the leads provided by Plaintiff and conduct a targeted search.

## IV. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment; grant his cross-motion for summary judgment; and remand to the FBI to conduct additional searches. The additional searches should include: (1)  a review of the case files of Shane Madonna, the Young Communist League in Ohio, the People's Revolutionary Party in Philadelphia, and the Korean Friendship Association; (2) an ECF search through Sentinel of Martin Droll's name and variations thereof, as well as his alias "Marty Rifles"; (3) communication with the relevant field offices and divisions to determine whether any FBI personnel are aware of any potentially responsive records.

Respectfully Submitted,

  /s/ Jeffrey Light

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com

*Counsel for Plaintiff*