**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Austin Nolen,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 14-cv-01590 (APM) |
| ) | |
| **Department of Justice,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORADUM OPINION**

**I.   INTRODUCTION**

Plaintiff Austin Nolen brings this suit under the Freedom of Information Act ("FOIA") challenging the adequacy of the Federal Bureau of Investigation's ("FBI") search in response to his extraordinarily detailed, ten-page FOIA request. In sum, Plaintiff requested "any and all records . . . relating or referring" to Martin Droll, a deceased socialist writer and organizer. In response to Plaintiff's request, the FBI searched both the index of its Central Records System ("CRS") using its Universal Index ("UNI") application, as well as the indices of its Electronic Surveillance ("ELSUR") records system, for files relating to Droll. Each database was searched using a seven-way phonetic breakdown of Droll's name. Each search included Droll's date and place of birth, and date and place of death. But the FBI found no records.

After Plaintiff filed this lawsuit, the FBI again searched the CRS index, but this time searched for any cross-references to Droll that might exist in other files. This follow-up search employed the same terms used in the initial search, as well as Droll's alias, "Marty Rifles," which was identified for the first time in Plaintiff's Complaint. Applying these same terms, the FBI also

searched the Sentinel Index of the CRS. In all, the FBI conducted four searches of two different databases on two separate occasions. None of these searches returned any responsive records.

Before the court are Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. Defendant Department of Justice ("DOJ") argues that the FBI's searches, as described above, were adequate because they were reasonably likely to identify records responsive to Plaintiff's FOIA request. Plaintiff counters that the FBI's search was inadequate because the FBI: (1) did not search the case files of Droll's known associates and affiliated organizations; (2) did not search the Electronic Case File ("ECF"), a separate index that can be used to conduct text-based searches of the FBI's records; and (3) failed to contact relevant field offices and divisions to determine whether those offices possessed responsive records.

Having reviewed the record, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment.

## II. BACKGROUND

### A. Factual Background

Martin Andrew Droll was a socialist writer and organizer involved in several "leftist movements and organizations." Compl., ECF No. 1, ¶¶ 7, 9. According to Plaintiff's Complaint, on April 17, 2014, Droll made a Freedom of Information Act ("FOIA") request to the FBI, seeking records about himself that the FBI had in its possession. *Id.* ¶ 16. Droll made the request after one of his associates, Shane Madonna, told Droll that the FBI possessed material indicating that Droll was a religious extremist. *Id.* ¶¶ 14-16. Droll allegedly received a response from the FBI on May 13, 2014, though the Complaint does not specify the response's contents. *Id.* ¶ 16. That same day, Droll committed suicide. *Id.* ¶ 17.

On June 6, 2014, Plaintiff Austin Nolen submitted a FOIA request to the FBI. *See generally* Def.'s Mot. for Summ. J., ECF No. 9 [hereinafter Def.'s Mot.], Ex. A, ECF No. 9-1. Plaintiff's request was unusually lengthy and elaborate, spanning ten, single-spaced pages with more than 33 different paragraphs of instructions. *See generally id.* In those ten pages, Plaintiff sought "any and all records . . . relating or referring to the deceased person Martin Andrew Droll." *Id.* at 14.

Plaintiff also made a number of specific search requests, only a few of which are pertinent to this litigation. First, he asked that the FBI conduct a text-based search of the Electronic Case File ("ECF"). *Id.* at 17. The ECF is an application of the Automated Case Support System ("ACS"). Def.'s Mot., Attachment A, Decl. of David M. Hardy, ¶ 16 [hereinafter Hardy Decl.]. ACS allows the FBI to search the Central Records System ("CRS"), which contains "administrative, applicant, investigative, personnel, and other files complied for law enforcement purposes," using several different methods. *Id.* ¶¶ 12, 16. Plaintiff's request also asked the FBI to search at least 98 other indices, including the Electronic Surveillance ("ELSUR") indices. Def.'s Mot., Ex. A, at 18-19. ELSUR "maintain[s] information on subjects whose electronic and/or voice communications have been intercepted as the result of a consensual electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI." Hardy Decl. ¶ 18. Finally, Plaintiff also requested a search of "any and all FBI field offices and/or resident agencies, and any and all FBI and/or Joint task force offices." Def.'s Mot., Ex. A, at 15.

In addition to spelling out these expansive search requests, Plaintiff provided additional information on Droll, such as his date and place of birth (April 14, 1989, in Guernsey County, Ohio) and his date and place of death (May 13, 2014, in Philadelphia County, Pennsylvania). *Id.*

at 14. The request also stated that Droll's associate, Shane Madonna, was questioned by at least one FBI agent on the "existence and nature of his relationship with Mr. Droll." *Id.*

On June 30, 2014, the FBI responded to Plaintiff's FOIA Request. Def.'s Mot., Ex. B, ECF No. 9-1, at 27. The FBI informed Plaintiff that, after searching the CRS and the ELSUR indices, the FBI was "unable to identify [any] main file records responsive to [Plaintiff's] FOIA [request]." *Id.* at 27. David M. Hardy, the FBI's Section Chief of the Record/Information Dissemination Section of the Records Management Division in Winchester, Virginia, provided a declaration describing the FBI's initial searches. According to Hardy, the FBI initially searched "the automated indices to the CRS to identify all potentially responsive files indexed to FOIA subject Martin Andrew Droll." Hardy Decl. ¶ 22. In its search, using the Universal Index ("UNI") application, the FBI employed a "[seven]-way phonetic breakdown" of Droll's name including: "Droll, Martin, Andrew"; "Droll, Martin, A"; "Droll, M, A"; "Droll, Martin"; "Droll, M"; "Droll, Andrew"; and "Droll, A." Def.'s Reply to Pl.'s Cross-Mot., Second Declaration of David M. Hardy, ECF No. 13-1, ¶ 6(a) [hereinafter Second Hardy Decl.]; Hardy Decl. ¶¶ 22-23. The search also included Droll's "date of birth, date of death, and places of birth and death to facilitate the identification of responsive records." *Id.* ¶ 22. Employing the same terms used to perform the index search of the CRS, the FBI also searched the ELSUR indices for any main files relating to Droll. *Id.* ¶ 23. This search, like the CRS search, did not reveal any responsive documents. *Id.*

Plaintiff appealed the FBI's failure to find records to the Office of Information Policy ("OIP") on July 7, 2014, claiming that the FBI had failed to conduct an adequate search for responsive material. Def.'s Mot., Ex. C, ECF No. 9-1, at 31. OIP sent Plaintiff an initial response on July 11, 2014, informing him that it had received his request. Def.'s Mot., Ex. D, ECF No. 9-

1, at 48. On September 16, 2014, OIP affirmed the FBI's determination that the FBI had no responsive documents to turn over to Plaintiff. Def.'s Mot., Ex. E, ECF No. 9-1, at 50.

### B. Procedural Background

On September 19, 2014, three days after OIP denied his appeal, Plaintiff filed this action challenging the adequacy of the FBI's search. *See generally* Compl. In his Complaint, Plaintiff asserted that DOJ, through its component the FBI, violated FOIA because it "fail[ed] to adequately search for and improperly with[held] records" that were responsive to Plaintiff's FOIA request. *Id.* ¶ 26.

After Plaintiff filed his Complaint, the FBI made additional attempts to locate records related to Droll. The FBI again searched the CRS with UNI, this time to identify any cross-references to Droll, using the same search terms as its initial search. Second Hardy Decl. ¶¶ 6(b). Cross-reference searches are intended to identify files that "mention or reference [an] individual, organization, or other subject matter contained in a document located in another main file on a different subject matter." Hardy Decl. ¶ 14(b). The FBI also searched the Sentinel Index of the CRS, which it had not previously done. Second Hardy Decl. ¶ 6(c). "Sentinel is the FBI's next generation case management system" that "includes the same automated applications that are utilized in ACS." *Id.* Thus, there is "an index sharing nexus between Sentinel and ACS systems." *Id.* Despite this overlap, the FBI nonetheless voluntarily searched the Sentinel index using the same search terms previously described. *Id.* These post-initiation-of-litigation searches also included Droll's alias, "Marty Rifles," which Plaintiff had identified for the first time in his Complaint. Hardy Decl. ¶ 24. Again, the FBI's searches of these databases yielded no responsive documents. Second Hardy Decl. ¶¶ 6(b)-(c).

On January 28, 2015, Defendant DOJ filed a Motion for Summary Judgment. *See generally* Def.'s Mot.  Defendant argues that the FBI's response to Plaintiff's FOIA request was adequate because the FBI searched two databases, the CRS and the ELSUR indices, which were reasonably likely to contain records responsive to Plaintiff's FOIA request.  *Id.* at 11-13.  None of these searches revealed any responsive documents.  *Id.*

On March 2, 2015, Plaintiff filed a Cross-Motion for Summary Judgment.  *See generally* Pl.'s Cross-Mot. for Summ. J., ECF No. 12 [hereinafter Pl.'s Cross-Mot.].  In his Cross-Motion, Plaintiff claims that the FBI's search was inadequate for three reasons.  First, Plaintiff contends that the FBI should have searched for responsive documents by also searching files relating to Droll's known associates and affiliated organizations.  *Id.* at 3.  Second, he argues that the FBI should have conducted a full-text ECF search through Sentinel.  *Id.* at 2-3.  Third, Plaintiff claims that the FBI should have reached out to relevant field offices in its search for responsive records. *Id.* at 3.  The court will consider each of these claims in turn.

## III.  DISCUSSION

### A.  Standard of Review

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party, and a fact is "material" only if it is capable of affecting the outcome of litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citations omitted).  A court may award summary judgment in a FOIA case using solely the information

included in the agency's affidavits or declarations if they are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citations and internal quotation marks omitted). Further, these affidavits should generally "set[ ] forth the search terms and the type of search performed, and aver[ ] that all files likely to contain responsive materials (if such records exist) were searched." *Mobley v. CIA*, No. 13-5286, at 16-17 (D.C. Cir. Nov. 13, 2015) (citation and internal quotation marks omitted). Such affidavits are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id*. at 17 (citations and internal quotation marks omitted). The court must decide "not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation omitted). "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Id.* (citation omitted).

### B. Plaintiff's Arguments Concerning the Inadequacy of the Search

#### 1. *The FBI's Decision Not to Review Associated Case Files*

Plaintiff first claims the FBI's search was inadequate because the FBI declined to search for any existing files relating to Droll's known associates. Specifically, Plaintiff contends that the FBI should have searched for records pertaining to Shane Madonna. Pl.'s Cross-Mot. at 10. In his FOIA request, Plaintiff included the following under the heading "Additional Description Information":

> On April 17, 2014, an associate [of] Mr. Droll's, Shane Madonna, attended a hearing in his criminal case in the Court of Common Pleas for Guernsey County, Ohio . . . . Upon arrival at the courthouse, Mr. Madonna was informed that the courthouse was on high security because of his association with Mr. Droll; at least one FBI agent then questioned him as to the existence and nature of his relationship with Mr. Droll.

Def.'s Mot., Ex. A, at 14. This information regarding Mr. Madonna was also alleged in the Complaint. *See* Compl. ¶ 14. Plaintiff contends that, based on this information, the FBI should have looked for files relating to Madonna—which it did not do—when searching for responsive records. Pl.'s Cross-Mot. at 10-11.

In a related argument, Plaintiff also asserts that the FBI's search was inadequate because the FBI did not search for files concerning organizations with which Droll was allegedly affiliated. *Id.* Plaintiff's original FOIA request, however, did not identify any organizations supposedly associated with Droll. *See generally* Pl.'s Cross-Mot., Ex. A. Plaintiff offered that information for the first time in his Complaint. Compl. ¶¶ 8-10. According to the Complaint, Droll was involved with the Young Communist League in Ohio, the People's Revolutionary Party in Philadelphia, Occupy Philly, and the Korean Friendship Association. *Id.* Plaintiff argues that, because this information was provided in the Complaint, the post-litigation search should have included these organizations. Pl.'s Cross-Mot. at 10-11.

In general, when conducting a search in response to a FOIA request, "[t]he agency is not required to speculate about potential leads." *Kowalcyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996); *see also Mobley*, No. 13-5286, at 19 ("A lead must be both clear and certain and so apparent that the FBI cannot in good faith fail to pursue it." (citation and internal quotation marks omitted)). Furthermore, an agency "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Id.*; *see also Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) ("[M]ere reference to other files does not establish the existence of documents that are relevant to [a] FOIA request[.]"); *Pontillo v. U.S. Parole Comm'n*, No. 95-5071, 1996 WL 310145, at *1 (D.C. Cir. 1996) (holding the DEA's search to be reasonable even though the DEA did not search for "any records under the name 'Sam Pontillo'"). The question the court must always

consider "is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg*, 745 F.2d at 1485 (citation omitted).

Applying the foregoing principles, the court rejects Plaintiff's contention that the FBI should have searched for files related to organizations with which Droll was allegedly affiliated. Compl. ¶¶ 8-10. Reference to those organizations is found nowhere in the "four corners of [Plaintiff's] request." *Kowalcyk*, 73 F.3d at 389. Similar to the appellant in *Pontillo*, Plaintiff failed to ask for—or even include mention of—information regarding these organizations in his FOIA request. Even though the FBI searched for Droll's alias, "Marty Rifles," which was identified for the first time in the Complaint, *see* Hardy Decl. ¶ 24, this additional search that the FBI *voluntarily* undertook does not compel the FBI, without more, to run searches as to every new piece of information contained in a complaint. Accordingly, the FBI's decision not to search its databases for organizations with which Droll was affiliated was reasonable.

As for Madonna, who Plaintiff did identify in his FOIA request, Def.'s Mot., Ex. A, at 14, the searches that the FBI did perform likely would have captured responsive records about Droll in any file concerning Madonna, if such a file existed. After Plaintiff filed suit, the FBI conducted a search of CRS "using the same search terms it used at the administrative stage in order to identify any" files that had been cross-referenced and indexed to Droll. Hardy Decl. ¶ 24 (footnote omitted). A cross-referenced entry "is generally only a mere mention or reference to an individual, organization, or other subject matter [that is] contained in a document located in another main file on a *different* subject matter." *Id.* ¶ 14(b) (emphasis added). In other words, a cross-reference search of CRS for Droll (or variations of his name) would have revealed if Droll was referenced in any other FBI files, including a file on Madonna, if such a file existed. Because the FBI found

no cross-references to Droll in other files, it was reasonable for the FBI to decline to search for files on Madonna in its attempts to find information on Droll.

### 2. The FBI's Decision Not to Search the ECF

Plaintiff next claims the FBI's search was inadequate because the FBI only searched the CRS (using UNI and Sentinel) and the ELSUR indices, but did not conduct a text search of the ECF as Plaintiff requested. Pl.'s Cross-Mot. at 7-9. The court concludes that the FBI's search, as conducted, was adequate. The FBI was not required to do a text search of the ECF.

The FBI here conducted a series of searches of several databases where records relating to Droll, if they existed, were reasonably likely to be found. The FBI searched "the automated indices to the CRS" using UNI to run a "[seven]-way phonetic breakdown of [Droll's] names," as well as Droll's "date of birth, date of death, and places of birth and death." Hardy Decl. ¶ 22; Second Hardy Decl. ¶ 6(a). "CRS consist[s] of administrative, applicant, investigative, personnel, and other files compiled for law enforcement purposes," *id.* at ¶ 12, and "is where the FBI indexes information about individuals, organizations, and other subjects of investigative interest for future retrieval," Second Hardy Decl. ¶ 6. It is also the database the FBI uses to search "for documents that are potentially responsive to FOIA/Privacy Act requests." Hardy Decl. ¶ 12. The UNI contains approximately 109.5 million records and "functions to index names to cases, and to search names and cases for use in FBI investigations." Hardy Decl. ¶ 16(c). Yet this search revealed no responsive records.

The FBI also searched the ELSUR indices using the same search terms. *Id.* ¶ 23. ELSUR is used "to maintain information on subjects whose electronic and/or voice communications have been intercepted as the result of a consensual electronic surveillance or a court-ordered (and/or

sought) electronic surveillance conducted by the FBI." *Id.* ¶ 18. Again, no responsive records were found.

After Plaintiff filed his Complaint, the FBI conducted another two searches: (1) the CRS, again using UNI, and (2) the CRS using the Sentinel index. Second Hardy Decl. ¶ 6(b)-(c). "Sentinel is the FBI's next generation case management system" that "includes the same automated applications that are utilized in ACS." Second Hardy Decl. ¶ 6(c). In addition to using the same search terms it did in its initial search, the FBI also searched for "Marty Rifles," Droll's alias, which was not identified in Plaintiff's FOIA request, but was identified in the Complaint. *Id.* ¶ 6(b). No responsive records were identified by the search.

In all, the FBI conducted four different searches using two databases without finding *any* records which would suggest that other databases were "reasonably likely" to contain responsive documents. These efforts were unquestionably diligent and reasonable. *Canning v. DOJ*, 848 F. Supp. 1037, 1051 (upholding adequacy of search after FBI examined its CRS, General, and ELSUR indices). Further, Hardy expressly attested to the fact that the searches were "adequate searches reasonably likely to locate records responsive to [P]laintiff's request." Hardy Decl. at 12. *See Mobley*, No. 13-5286, at 18 (finding the FBI's search of the CRS to be adequate because of, in part, an agency declaration asserting that the FBI's search was "reasonably likely to produce the information [the plaintiff] requested." (citation omitted)). And courts have found far less exacting searches by the FBI to be adequate. *See Rosenberg v. U.S. Dep't of Immigration & Customs Enforcement*, 13 F. Supp. 3d 92, 102-05 (D.D.C. 2014) (concluding that it was not improper for the FBI to consider only the results of the CRS search to determine whether "it had searched all locations where potentially responsive records were reasonably likely to be located").

11

Plaintiff nevertheless contends that the FBI should have done a text search of the ECF because "Martin Droll" and "Marty Rifles" "are uncommon names" and "it is unlikely that an ECF search would be too burdensome." Pl.'s Cross-Mot. at 9. These contentions misinterpret an agency's burden under FOIA.

Once an agency has conducted a good faith search in response to a FOIA request, the burden is on the requesting party to provide evidence that other databases are reasonably likely to contain responsive documents. *See Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998) ("[T]he proper inquiry is whether the requesting party has established a sufficient predicate to justify searching for a particular type of record."); *see also Bloeser v. DOJ*, 811 F. Supp. 2d 316, 321 (D.D.C. 2011) ("[I]t is the requester's responsibility to frame requests with sufficient particularity to . . . enable the searching agency to determine precisely what records are being requested." (citations and internal quotation marks omitted)). Mere speculation that additional documents *might* be found in another database is not enough to render an agency's search inadequate. *See Meeropol v. Meese*, 790 F.2d 942, 954 (D.C. Cir. 1986) ("In the absence of more concrete evidence from appellants that such files actually exist, their speculative assertions cannot serve as the basis for vacating the grant of partial summary judgment.").

Here, Plaintiff has provided neither "concrete evidence" nor a "sufficient predicate" that a text search of ECF would produce responsive documents. The fact that the subject's name is uncommon or that the search in question—according to Plaintiff—would not be burdensome does not answer the controlling question, which is whether the ECF is reasonably likely to contain responsive documents. Plaintiff here has offered nothing other than speculation that an ECF text search might turn up records. Such mere speculation is not enough to render the FBI's search inadequate.

Moreover, "a search is generally adequate where the agency has sufficiently explained its search process and why the specified record systems are not reasonably likely to contain responsive records." *Mobley*, No. 13-5286, at 20 (citations omitted). That is precisely what the FBI has done here. Hardy's declaration not only thoroughly explains the search process, as described above, but also clarifies why a text search of ECF is not reasonably likely to return responsive documents. Hardy Decl ¶¶ 27-28; Second Hardy Decl. ¶ 7(a). That Plaintiff asked the FBI to run a text search, and that the FBI did not do it, does not automatically render the search inadequate. "[A] request for an agency to search a particular record system—without more—does not invariably constitute a lead that an agency must pursue." *Mobley*, No. 13-5286, at 19. After all, a FOIA requester's detailed search instructions cannot dictate the reasonableness of the scope of an agency's FOIA search. *Id.* ("[U]nder [the plaintiff's] approach, which would allow a requester to dictate, through search instructions, the scope of an agency's search, the reasonableness test for search adequacy long adhered to in this circuit would be undermined.")

        3.     *The FBI's Decision Not to Contact Individual Field Offices*

Finally, Plaintiff contends that the FBI's search was inadequate because the FBI failed to contact individual field offices. Specifically, Plaintiff argues that the FBI "failed to communicate with the Cincinnati Field Office or the Cambridge, Ohio Residence Agency," both of which are located in Droll's state of birth. Pl.'s Cross-Mot. at 10. Plaintiff also claims the FBI should have "communicated with the Philadelphia Field Office," *id.*, because the request noted that Droll died in Philadelphia County, Def.'s Mot., Ex. A, at 14. The mere fact of Droll's birth and death in states with FBI field offices does not, however, compel searches there.

When conducting a FOIA search, "the agency need pursue only a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain." *Kowalczyk*, 73 F.3d at 389. "An agency

need only search the records of a particular field office in those rare situations where red flags point[ ] to the probable existence of responsive agency records that arise during its efforts to respond to a FOIA request." *Dillon v. DOJ*, Civ. No. 13-532, 2015 WL 1969840 (RBW), at *7 (D.D.C. May 1, 2015) (citation and internal quotation marks omitted); *see also Marrera v. DOJ*, 622 F. Supp. 51, 54 (D.D.C. 1985) (stating that there is "no requirement that an agency search every division or field office in response to a FOIA request"). Thus, the "FBI does not fail to meet its obligations under the FOIA by conducting a search of [FBI headquarters'] records only," *Higgins v. DOJ*, 919 F. Supp. 2d 131, 141-42 (D.D.C. 2013), unless there is some evidence "that responsive records that were not otherwise to be found as a result of the [FBI's] search" are located in another office," *Leopold v. Nat'l Sec. Agency*, No. 14-cv-805 (TSC), 2015 WL 4603026, at *4 (D.D.C. July 31, 2015).

Here, Plaintiff has offered no "red flags" other than the fact of Droll's birth and death—which are not flags of any color—to support his assertion that records likely could be found in the FBI's field offices. His FOIA request did not specify any field office to be searched. It simply identified Droll's birthplace, Guernsey County, and his place of death, Philadelphia County. Plaintiff has offered no evidence, only speculation, that the Cincinnati and Philadelphia field offices would possess records about Droll. That is not enough. "It is plaintiff's responsibility to tell the FBI where responsive records pertaining to activity . . . exist[ ]." *Higgins*, 919 F. Supp. 2d at 141. Plaintiff failed to so here. The FBI's search, therefore, was not rendered inadequate because it did not search its field offices. *See Kowalczyk*, 73 F.3d at 389 (holding that the FBI's failure to contact its New York field office was not improper because the plaintiff's FOIA request made "no reference to the New York field office or, indeed, to New York"); *Dillon*, 2015 WL 1969840, at *7 (rejecting the plaintiff's contention that the FBI should have searched the local

records of the Minneapolis field office because the FBI's declarations established that records responsive to the request were not "reasonably likely to be found in locations outside of the CRS") (citation and internal quotation marks omitted).

Finally, the three cases Plaintiff relies on to support his argument that the FBI had an obligation under FOIA to contact individual field offices are distinguishable. Pl.'s Cross-Mot. at 10-11. In all three cases, the FBI *voluntarily* reached out to individual field offices; the courts did not hold that the FBI's search was inadequate because it failed to do so. *See* Declaration of David M. Hardy, *SAE Productions, Inc. v. FBI*, No. 07-00866 (JR), 2008 WL 3906896 (D.D.C. Aug. 25, 2008), Pl.'s Cross-Mot., Ex. 13; Declaration of David M. Hardy, *Shapiro v. DOJ*, 37 F. Supp. 3d 7 (D.D.C. Mar. 12, 2014), Pl.'s Cross-Mot., Ex. 12; Declaration of David M. Hardy, *Electronic Frontier Foundation v. DOJ*, No. 06-01773 (RBW) (D.D.C. Apr. 2, 2007).

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is granted and Plaintiff's Cross-Motion for Summary Judgment is denied. A separate Order accompanies this Memorandum Opinion.

Dated: November 19, 2015

Amit P. Mehta
United States District Judge